IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-2872-CMA-NYW

BONNIE BIRSE, individually and on behalf of all similarly situated participants and beneficiaries of the CenturyLink Dollars & Sense 401(k) Plan,

    Plaintiff,

v.

CENTURYLINK, INC., and CENTURYLINK INVESTMENT MANAGEMENT COMPANY,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants move to dismiss Bonnie Birse's amended complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, they state:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.LCivR. 7.1 and CMA Civ. Practice Standard 7.1D, defendants' counsel certifies that they communicated with Birse about her original complaint's deficiencies by email and telephone on February 21 and 22, 2018. Birse filed her amended complaint on March 2, 2018. On March 20, 2018, defendants' counsel notified Birse by email that deficiencies remained in her amended complaint that could potentially be corrected through amendment, and offered to further confer by telephone. Birse declined.

\* \* \*

Birse's amended complaint should be dismissed because its central premise – that a 401(k) plan's investment fiduciary and its sponsor are liable whenever a plan

investment option underperforms its benchmark – is incorrect as a matter of law. Birse's amended complaint relates to the CenturyLink Dollars & Sense 401(k) Plan (the "Plan") and attacks one of the Plan's several investment options on the grounds that it was actively managed and failed to outperform the market. But the law does not require that a plan offer only market-beating funds, and it does not proscribe including actively-managed funds – with their relatively higher risk and management fees – among plan investment options. Indeed, ERISA requires diversification of plan offerings. Thus, the Court should dismiss all of Birse's claims with prejudice.

## FACTUAL BACKGROUND

***The Parties.*** Birse is a participant in the Plan (First Amend. Compl. ("FAC") ¶ 16), which is a 401(k) plan offered to CenturyLink employees (*id.* ¶ 13).[1] CenturyLink, Inc. ("CenturyLink") is the Plan sponsor. (*Id.* ¶ 17.) CenturyLink Investment Management Company ("CIM") is the sole named fiduciary for all purposes related to the management and investment of Plan assets. (*Id.* ¶¶ 21-22; Ex. A, 2017 Plan, § 9.8(b); *see also* Ex. A, 2017 Plan, § 9.1.[2]) It determines general investment strategies for Plan assets and oversees the selection of investment vehicles offered to participants. (Ex. A, 2017 Plan, § 9.8(b).)

---

[1] Specifically, the Plan is an individual account defined contribution plan, as defined under ERISA. 29 U.S.C. § 1002(34).
[2] All exhibit citations are to the exhibits to the Declaration of Amanda S. Amert. Plan documents may be considered on a Rule 12(b)(6) motion without converting it to a Rule 56 motion because they are referenced indirectly in the amended complaint (*see, e.g.*, FAC ¶¶ 4, 23, 27-28, 31), and they are central to Birse's claims. *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016). The Court may also take judicial notice of public filings such as the Plan's Form 5500. *Id.* at 388 n.5.

The Plan documents make clear that CenturyLink, as the Plan's sponsor, has no fiduciary duties to the Plan. (*Id.* § 9.3 (stating that CenturyLink's duties are "not as a fiduciary" to the Plan).) Designating CIM as the Plan's investment management fiduciary in the Plan's governing documents was part of CenturyLink's role as Plan sponsor. (*See id.*)

The Plan offers a wide range of investment options. (Ex. C, Form 5500 for Plan Year 2016, at 28-30.) Eligible participants who contribute to the Plan receive employer matching contributions to their Plan accounts. (Ex. B, 2017 SPD, at 10-11, 15-16; Ex. A, 2017 Plan, § 3.2.) Participants choose how to allocate these contributions across the Plan's investment options, which are grouped into: (1) target date funds; (2) core funds; and (3) a self-directed brokerage account. (Ex. B, 2017 SPD, at 4, 20-22.)

Target date funds offer participants a one-step choice that provides a broadly-diversified investment portfolio which adjusts over time. (*Id.* at 20.) Target date funds correlate with a participant's anticipated retirement date. (*Id.*) Each target date fund includes a wide mix of investments, such as global equities and fixed income. (*Id.*)

Core funds allow participants to construct their own diversified investment portfolios from a menu of Plan investment options that includes passively-managed and actively-managed funds in a variety of asset classes. (Ex. C, Form 5500 for Plan Year 2016, at 29-30; Ex. B, 2017 SPD, at 21.) Passively-managed funds are designed to track specific indexes or other benchmarks. (*Id.*) Actively-managed funds, which generally carry higher investment management fees, are designed to outperform specific benchmarks. (Ex. C, Form 5500 for Plan Year 2016, at 30; Ex. B, 2017 SPD, at

21.) Those offered as core funds in the Plan are diversified among several investment managers. (*Id.*) This allows for different management styles to outperform the market, depending on the economic environment, and reduces risks associated with a single manager. (*Id.*) Participants who want to construct a portfolio from a broader array of choices may do so through the Plan's self-directed brokerage window, which offers a wide range of funds through a Charles Schwab account. (Ex. B, 2017 SPD, at 20.)

One of the Plan's four actively managed core funds was the Active Large Cap U.S. Stock Fund ("Large Cap Fund" or the "Fund").[3] (Ex. B, 2017 SPD, at 64; Ex. C, Form 5500 for Plan Year 2016, at 30.) Its holdings were diversified across five active managers and one passive manager. (FAC ¶ 27.) The Plan also used the Fund as a component investment in its target date funds. (*Id.* ¶ 5.) Birse allocated a portion of her 401(k) account to a target date fund; she did not make a direct allocation to the Large Cap Fund. (*Id.* ¶¶ 8, 16, 47(d).)

***Complaint Allegations.*** All of Birse's claims relate to the Large Cap Fund. In her first claim, Birse alleges that CIM breached its fiduciary duty by imprudently offering "the defectively designed" Fund and then failing to monitor and replace it when it underperformed. (*Id.* ¶¶ 50-55.) In her second claim, Birse alleges that CenturyLink had and breached a duty to monitor CIM with respect to the Fund. (*Id.* ¶¶ 56-61.) In her third claim, Birse alleges that CenturyLink is liable for CIM's alleged breach as its cofiduciary. (*Id.* ¶¶ 62-65.) She seeks to represent a class of all participants who

---

[3] In August 2017, CIM combined the Large Cap Fund and the Active Small Cap U.S. Stock Fund into a single fund. (Ex. D, Aug. 25, 2017 SMM, at 1.)

invested 401(k) assets in the Fund, either through allocation within the target date funds (as she did) or through direct allocation to the Fund (as she did not). (*Id.* ¶¶ 8, 46.)

## ARGUMENT

Birse's claims amount to nothing more than Monday-morning quarterbacking. She draws no connection between any fiduciary *decision-making process* and any alleged Plan *loss* with respect to either defendant, and she fails to plead that CenturyLink is a fiduciary to the Plan. Instead, she alleges that, in hindsight, the Plan could have generated better returns by making different choices, but this does not support a plausible claim of fiduciary breach. The Court should dismiss her claims.

### I. Birse Fails To Plead Facts Sufficient To State Any Claim For Breach Of Fiduciary Duty Based On The Plan's Investment In The Large Cap Fund.

Birse's allegation that the Large Cap Fund trailed its benchmark by 2.11% over a five-year period gets her nowhere near pleading "enough facts to state a claim to relief *that is plausible on its face*," as she must to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1183 (10th Cir. 2016). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim, Birse's complaint allegations must allow the court to "infer more than the mere possibility of misconduct." *Id.* at 679.

All of Birse's claims fail because she has not adequately alleged that either defendant breached its fiduciary duties. Indeed, her derivative claims against CenturyLink fail to allege that CenturyLink had any fiduciary duty at all. As a result, her amended complaint should be dismissed.

### A.     Birse's Hindsight-Driven Complaints About The Performance And Structure Of The Large Cap Fund Are Insufficient.

All three of Birse's claims depend on her improper, hindsight-based allegation that offering the Large Cap Fund was a breach of fiduciary duty.  Birse's first claim, against CIM, is that selecting and continuing to offer the Large Cap Fund as a Plan investment option was a breach of the "duty to monitor and replace investment options." (FAC ¶¶ 50-55.)  But ERISA's fiduciary duties are statutory, and the statute includes no such duties.  *See* 29 U.S.C. § 1104(a)(1) (enumerating duties of loyalty, prudence, diversification, and compliance with plan documents).  Courts routinely construe claims like Birse's as alleging breach of the duty of prudence.  *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015) (duty of prudence involves a continuing duty to monitor investments and remove imprudent ones).  Thus, Birse cannot state a claim unless she can plead the elements of a breach of the duty of prudence, which, as discussed below, she cannot.  *See id.*; *see also White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *18-*19 (N.D. Cal. Aug. 29, 2016).  Birse's second and third claims, asserting failure to monitor and cofiduciary liability for CenturyLink, depend on her allegation that CIM breached its duty, and they cannot survive if her first claim fails. *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-CV-1839, 2016 WL 7494320, at *11, *16 (D. Conn. Dec. 30, 2016), *aff'd*, No. 17-0239-CV, 2017 WL 4534782 (2d Cir. Oct. 11, 2017) (dismissing cofiduciary and monitoring claims where claim for underlying breach failed).

To state a claim for breach of fiduciary duty, Birse must allege CIM is a plan fiduciary and that it breached its fiduciary duties, resulting in a Plan loss.  29 U.S.C.

6

§ 1109; *Pioneer Centres Holding Co. E'ee Stock Ownership Plan & Tr. v. Alerus*, 858 F.3d 1324, 1334 (10th Cir. 2017), *cert. pending*, No. 17-667 (Nov. 6, 2017). To determine whether a breach of the duty of prudence has occurred, courts examine the fiduciary's *process* and *method* of arriving at the challenged decision—not its results. *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7-8 (1st Cir. 2009). A decision reached as a result of rational consideration is not a fiduciary breach, even if its outcome is undesirable. *See Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 10 (1st Cir. 2018) ("The test of prudence . . . is one of *conduct*, and not a test of the result of performance of the investment." (emphasis in original)). Thus, "a complaint that lacks allegations relating directly to the methods employed by the ERISA fiduciary may survive a motion to dismiss only if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." *White*, 2016 WL 4502808, at *8 (internal quotation marks omitted). A key consideration is whether the plaintiff adequately alleges that a prudent fiduciary in the same position as the defendants could have known that some alternative course of action would have had a better result for the plan. *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016).

Hindsight-based challenges to fiduciary decisions are insufficient to plead a fiduciary breach because ERISA requires fiduciaries to make decisions "with the care, skill, prudence, and diligence *under the circumstances then prevailing*." 29 U.S.C. § 1104(a)(1)(B) (emphasis added). Courts judge a fiduciary's actions "based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Pension Ben. Guar. Corp. ex rel. St. Vincent v.*

*Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013); *see also Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).

Bare allegations of underperformance or high fees also are insufficient to state a claim. "Investment losses are not proof that [a fiduciary] violated his duty of care." *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006); *see also Meiners v. Wells Fargo & Co.*, No. CV 16-3981, 2017 WL 2303968, at *3 (D. Minn. May 25, 2017). ERISA "encourages sponsors to allow more choice to participants in defined-contribution plans." *Loomis v. Exelon Corp.*, 658 F.3d 667, 673 (7th Cir. 2011). Therefore, challenging a particular investment option that is "in line with a wide swath of rational and competitive" alternatives does not support an inference that the defendant has violated the duty of prudence.[4] *Sweda v. Univ. of Pa.*, No. CV 16-4329, 2017 WL 4179752, at *7 (E.D. Pa. Sept. 21, 2017); *see also Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009). This is because fiduciaries are required to value a wide range of investment features in creating a plan's investment line-up. *White*, 2016 WL 4502808, at *10; *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (holding ERISA does not require fiduciaries to "scour the market to find and offer the cheapest possible fund").

Here, Birse's hindsight-driven and internally inconsistent criticisms of the Large Cap Fund's performance and costs are insufficient to plead a fiduciary breach, much less one that resulted in a Plan loss. She alleges that the Fund was flawed because it

---

[4] Courts have held that fee loads much higher than the Large Cap Fund's alleged 0.41% expense ratio are insufficient to support an inference of fiduciary breach. *See White*, 2016 WL 4502808, at *11 (ratios between 0.05% and 1.24% and collecting cases).

used five different active managers. (FAC ¶¶ 29-30.) She alleges that, because of the efficient nature of the market for large cap stocks, any active management, which carries with it a higher fee load, is unjustifiable. (*Id.* ¶¶ 24-26.) Finally, she makes selective hindsight performance comparisons to the returns on the T. Rowe Price Institutional Growth Fund (whose performance undermines her attack on active management) and the Russell 1000 Stock Index. (*Id.* ¶¶ 4, 33-36.) None of these criticisms can sustain her claim.

*First*, Birse fails to plead a breach because she does not identify any failure in CIM's fiduciary decision-making process with regard to the Large Cap Fund. She simply alleges that the Large Cap Fund underperformed (*id.* ¶¶ 4, 34, 54), and then cherry-picks the best-performing mutual fund that makes up part of the Fund and asserts that this mutual fund would have produced better returns (*id.* ¶¶ 35-36). Moreover, Birse negates any possible inference that CIM used a faulty process in selecting and retaining the Large Cap Fund by enumerating CIM's rational reasons for offering it. She alleges that "CIM designed the Large Cap Fund using a multiple manager approach 'in order to provide exposure to different styles of portfolio management,' 'increased resources' and 'a broader range of investment ideas.'" (FAC ¶ 28.) Those are rational bases for an investment decision, and even if hindsight shows they did not produce market-beating results, they support an inference of a prudent (and not an imprudent) decision-making process. *See White*, 2016 WL 4502808, at *7-*8.

*Second*, Birse does not adequately allege a loss to the Plan resulting from CIM's decision to offer the Large Cap Fund. With respect to participants who utilized target

9

date funds, Birse does not allege that the performance of those funds with the Large Cap Fund component was worse than alternative options. She alleges that the Plan could have paid less in fees and had higher returns if CIM had created a hypothetical target date fund that substituted the T. Rowe Price Fund for the Large Cap Fund, but she fails to explain how CIM, *without the benefit of the hindsight Birse enjoys*, could have known that the T. Rowe Price Fund would be the best-performing. (FAC ¶ 36.) And Birse does not include any allegations that CIM could have restructured the fund such that she would have achieved the particular results she wanted. Indeed, restructuring the target date funds to eliminate the Large Cap Fund could just as easily have resulted in a worse return as in a better one. Such speculation is insufficient to state a claim. *See White*, 2016 WL 4502808, at *12 (dismissing breach of fiduciary duty claims where plaintiffs' challenge was "primarily based on speculation" that plan fiduciaries could have offered other funds or structured investments differently).

With respect to participants who allocated their Plan accounts directly to the Large Cap Fund, Birse similarly does not connect the conduct she challenges—offering the Large Cap Fund as one of several investment options in the Plan—to a loss to the Plan. Birse attacks the multiple manager approach in the Large Cap Fund, and she compares it unfavorably to another Plan option, the CenturyLink U.S. Stock Index Fund. (FAC ¶¶ 24-32.) But Birse ignores that she and other participants could have selected this passive investment fund if they wanted to avoid the greater risks and costs of the Large Cap Fund. (*Id.* ¶ 22.) She also ignores that the Plan offers a brokerage window, through which participants could have accessed hundreds of actively and passively-

managed funds. (Ex. B, 2017 SPD, at 21-22.) Participants who felt that active management was not worth the cost and risk could have selected a different option.[5]

Thus, any purported loss from the Large Cap Fund's alleged underperformance resulted from participants' decisions to allocate their Plan accounts to the Fund, rather than to a different Plan investment option—not from CIM's decision to offer the Fund.[6] On similar facts, courts have concluded that there is no plausible support for fiduciary breach claims. *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3d Cir. 2011); *Hecker*, 556 F.3d at 586-87.

Moreover, Birse lacks standing to assert a claim based on direct allocation to the Large Cap Fund because she did not make such a direct allocation. (FAC ¶ 47(d).) To have standing, Birse must allege she has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). It is insufficient for Birse merely to assert that she is suing on behalf of participants for the Plan's alleged losses.[7] "An ERISA plan participant lacks standing to sue for ERISA

---

[5] Birse does not—and cannot—allege that participants who selected the Large Cap Fund did not understand that they were selecting a mostly-active multiple manager fund. The Plan provides participants with Fund Fact Sheets, which, in combination with other Plan disclosures, provide that information, as well as the expense ratios for each fund. (*See, e.g.*, Ex. E, Large Cap Fund Fact Sheet, June 30, 2017, at 2; Ex. B, 2017 SPD, at 21 (identifying Fund Fact Sheets as source for investment information).)
[6] In addition, it is apparent from the face of the amended complaint that the Plan satisfies ERISA's safe harbor provision, 29 U.S.C. § 1104(c), and is entitled to safe harbor protection against claims like Birse's, which arise from her investment decisions. This provides an independent basis for dismissal. *See Hecker*, 556 F.3d at 589.
[7] Birse must establish standing under both the statutory standing requirements of ERISA and Article III of the Constitution. *See Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1224-26 (10th Cir. 2011).

11

violations that cause injury to a plan but not individualized injury to the plan participant." *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015); *see also David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013). Thus, because Birse cannot have been injured through direct allocation to the Fund, she lacks standing to assert claims based on that premise. *See Taveras*, 612 F. App'x at 29 (plaintiff, who never invested in the fund subject to the complaint, lacked standing).

Birse has failed to plead any breach of the duty of prudence, let alone one that resulted in a loss to the Plan. She alleges no facts suggesting that any fiduciary process was flawed, and no support for her assertion that defendants' decisions as to the Large Cap Fund resulted in any loss or injury to Birse individually or to the Plan. Her claim should be dismissed.

### B. Birse Fails To State A Claim For Cofiduciary Liability Or For A Breach Of The Duty To Monitor Against CenturyLink.

For her derivative claims against CenturyLink, Birse must allege facts that support an inference that CenturyLink is a Plan fiduciary that breached its independent fiduciary duties in a way that caused or allowed CIM's alleged breach. *Matthews v. Duggal Color Projects, Inc.*, No. 94 CIV. 1140, 1997 WL 328076, at *2 n.1 (S.D.N.Y. June 16, 1997). To plead the elements of a claim for breach of the duty to monitor, Birse must allege that CenturyLink had a duty to monitor another fiduciary and that it failed to fulfill that duty, resulting in injury. *See* 29 U.S.C. § 1109; *White*, 2016 WL 4502808, at *18. For Birse to support her claim for cofiduciary liability, she must allege that CenturyLink is a fiduciary, that it had actual knowledge that a cofiduciary was

committing a breach, and that it failed to stop it.  *See Gernandt v. SandRidge Energy Inc.*, No. CIV-15-1001-D, 2017 WL 3219490, at *11 (W.D. Okla. July 28, 2017).

Courts reject unsupported assertions about fiduciary status.  *See, e.g.*, *Matthews*, 1997 WL 328076, at *2 n.1 (rejecting bare and conclusory allegation of fiduciary status).  An allegation that a defendant is a "plan sponsor" is insufficient as a matter of law to establish fiduciary status.  *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-78 (11th Cir. 2005) (dismissing breach of fiduciary duty claims with prejudice where plaintiffs merely alleged that the defendant fell "within the statutory definition of fiduciary"); *cf. Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (affirming district court's dismissal with prejudice of breach of fiduciary duty claim).

Here, Birse's allegation that CenturyLink is the Plan's sponsor (*see* FAC ¶¶ 57, 64) is insufficient.  *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) (holding actions taken as plan sponsor are not fiduciary in nature).  She does not allege that CenturyLink has any fiduciary duties under the Plan.  Nor could she.  The Plan specifies that CIM, not CenturyLink, is the named fiduciary for all purposes related to the management and investment of Plan assets.  (Ex. A, 2017 Plan, § 9.8(b).)  CenturyLink made that designation by adopting the Plan document, which is not a fiduciary function.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999); *In re JPMorgan Chase & Co ERISA Litig.*, No. 12 CIV. 04027, 2016 WL 110521, at *2-*3 (S.D.N.Y. Jan. 8, 2016), *aff'd sub nom.*, *Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016) ("[A]ctions taken as a sponsor, such as establishing a plan, are not fiduciary functions that trigger liability under ERISA.").  Thus, Birse has failed to plead that CenturyLink is a fiduciary.

In addition, Birse has failed to allege any mechanism through which CenturyLink should have known that CIM was allegedly breaching its duties, or what CenturyLink should have done to stop any alleged breaches. *See White*, 2016 WL 4502808, at *18. Birse does not allege that CIM should have been removed, and she does not seek such relief. Thus, Birse has failed to make out her claims for cofiduciary liability and breach of the duty to monitor because she has not adequately pled that CenturyLink is a fiduciary (as required for both claims), that it should have known CIM was breaching its fiduciary duties and could have stopped it but failed to do so (also required for both), and that it acted in a fiduciary capacity to appoint CIM (required for monitoring).

## II.     Birse's Claims Are Time Barred.

Claims for breach of ERISA fiduciary duties must be brought within three years of a plaintiff's actual knowledge of the alleged breach. 29 U.S.C. § 1113(2); *Mid-S. Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016). A plaintiff has actual knowledge when she knows "all material facts necessary to understand that some claim exists." *Mid-S. Iron Workers Welfare Plan v. Harmon*, No. CIV-15-138-C, 2015 WL 1137403, at *2 (W.D. Okla. Mar. 12, 2015), *aff'd*, 645 F. App'x 661 (10th Cir. 2016) (dismissing complaint filed beyond the three year statute of limitations). Dismissal is appropriate when the information that forms the basis of the complaint is disclosed to participants more than three years before the claim is brought. *Young v. GM Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009); *see also Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (charging plaintiffs with actual knowledge of information in plan).

Here, all of the essential facts that form the basis of Birse's amended complaint were disclosed to her more than three years before the complaint was filed. (*See, e.g.*, FAC ¶¶ 2-3, 33 (alleging that the Large Cap Fund "consistently and significantly underperformed . . . since its inception on April 1, 2012").) Birse's claims are based on her allegations that the Large Cap Fund had substantial management fees, that it underperformed, and that it used too many investment managers to allocate the investment capital. U.S. Department of Labor regulations have required detailed disclosures of these facts to participants for years. *See* 29 C.F.R. § 2550.404a-5 (effective Dec. 20, 2010); Annual Reporting & Disclosure, 72 Fed. Reg. 64, 710 (Nov. 16, 2007) (describing disclosures to be effective January 15, 2008 under 29 C.F.R. § 2520). Birse does not allege that defendants ever failed to make these mandatory disclosures, and a review of the Plan's governing documents and required disclosures to participants demonstrates that they did.[8]

Birse has been a Plan participant, and therefore, she received Plan disclosures since the Large Cap Fund became available in 2012. (FAC ¶ 16.) Thus, Birse's claims in her November 30, 2017 complaint are untimely and should be dismissed.

## CONCLUSION

The Court should dismiss Birse's amended complaint with prejudice.

---

[8] Plan documents and communications disclose the gross expense ratio for the Large Cap Fund. (*See, e.g.*, Ex. E, Large Cap Fund Fact Sheet, June 30, 2017, at 1-2; Ex. F, 2015 Target Date Fund Fact Sheet, Sept. 30, 2014, at 1-2; (*see also* FAC ¶ 24).)

15

Dated: March 23, 2018                Respectfully submitted,

                                     By:    /s/ *Craig C. Martin*

HOLLAND & HART LLP                   JENNER & BLOCK LLP
Michael S. Beaver                    Craig C. Martin
Steven T. Collis                     Amanda S. Amert
6380 S. Fiddlers Green Circle        Cristina Covarrubias
Suite 500                            Laura L. Norris
Greenwood Village, Colorado 80111    353 N. Clark Street
Tel: (303) 290-1600                  Chicago, Illinois 60654
                                     Tel: (312) 923-2776
                                     Fax: (312) 840-7776

                                     *Attorneys for Defendants*

Dated: March 23, 2018                Respectfully submitted,

                                     By:    /s/ *Craig C. Martin*

HOLLAND & HART LLP                   JENNER & BLOCK LLP
Michael S. Beaver                    Craig C. Martin
Steven T. Collis                     Amanda S. Amert
6380 S. Fiddlers Green Circle        Cristina Covarrubias
Suite 500                            Laura L. Norris
Greenwood Village, Colorado 80111    353 N. Clark Street
Tel: (303) 290-1600                  Chicago, Illinois 60654
                                     Tel: (312) 923-2776
                                     Fax: (312) 840-7776

                                     *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 23, 2018, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Franklin D. Azar
H. Zachary Balkin
Paul R. Wood
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 757-3206
azarf@fdazar.com
balkinz@fdazar.com
woodp@fdzar.com

***Counsel for Plaintiff***

/s/ *Craig C. Martin*
Craig C. Martin