In The United States District Court
For The District Of Colorado

Civil Action No. 1:17-cv-2872-CMA-NYW

BONNIE BIRSE and GERAD DETWILER, individually and on behalf of all similarly situated participants and beneficiaries of the CenturyLink Dollars & Sense 401(k) Plan,

Plaintiffs,

v.

CENTURYLINK, INC., and CENTURYLINK INVESTMENT MANAGEMENT COMPANY,

Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
## SECOND AMENDED COMPLAINT

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants move to dismiss plaintiffs' second amended complaint with prejudice.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.LCivR 7.1 and CMA Civ. Practice Standard 7.1D, defendants' counsel certify that they communicated with plaintiffs' counsel regarding the deficiencies of the second amended complaint by email on May 11, 2018, and offered to further confer by telephone.  Plaintiffs declined and indicated they oppose this motion.

\*   \*   \*

Plaintiffs' second amended complaint should be dismissed because ERISA fiduciaries and plan sponsors are not guarantors of investment performance.  Plaintiffs' second amended complaint attacks one of several investment options in the CenturyLink Dollars & Sense 401(k) Plan (the "Plan"), the Active Large Cap U.S. Stock

Fund (the "Large Cap Fund" or "Fund").  Plaintiffs assert the Fund underperformed as a result of its multiple active manager approach.  Plaintiffs' repeated amendments have not changed the fact that when stripped of hindsight (as they must be), plaintiffs' allegations do not support an inference of imprudence by Plan fiduciaries in offering the Fund.  Thus, the Court should dismiss all of plaintiffs' claims with prejudice.

## FACTUAL BACKGROUND

*The Parties.*  The Plan is a 401(k) plan offered to CenturyLink employees.  (Dkt. 53, Second Amended Complaint ("SAC") ¶ 13.)[1]  Plaintiff Bonnie Birse is, and plaintiff Gerad Detwiler was, a participant in the Plan.  (*Id.* ¶¶ 16-17.)  Defendant CenturyLink, Inc. ("CenturyLink") sponsors the Plan.  (*Id.* ¶ 18.)  Defendant CenturyLink Investment Management Company ("CIM") is the sole named fiduciary for all purposes related to the management and investment of Plan assets.  (*Id.* ¶¶ 22-23; Ex. A, 2017 Plan, § 9.8(b); *see also* Ex. A, 2017 Plan, § 9.1.[2])  CIM selects the investment options that are offered to Plan participants.  (Ex. A, 2017 Plan, § 9.8(b).)

The Plan documents make clear that CenturyLink has no fiduciary duties to the Plan.  (*Id.* § 9.3 (stating that CenturyLink's duties are "not as a fiduciary" to the Plan).)  As the Plan's sponsor, CenturyLink adopted the Plan's governing documents, which designate CIM as the Plan's investment management fiduciary.  (*See id.*)

---

[1] The Plan is an individual account defined contribution plan. 29 U.S.C. § 1002(34).
[2] Exhibit citations are to the exhibits to the Declaration of Amanda S. Amert.  Plan documents may be considered without converting this Rule 12(b)(6) motion to a Rule 56 motion because they are referenced indirectly in the second amended complaint (*see, e.g.*, SAC ¶¶ 4, 24, 28-29, 32), and are central to plaintiffs' claims.  *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).  The Court may also take judicial notice of public filings such as the Plan's Form 5500.  *Id.* at 388 n.5.

The Plan offers a wide range of investment options.  (Ex. C, Form 5500 for Plan Year 2016, at 28-30.)  Participants choose how to allocate their Plan accounts across the Plan's investment options, which are grouped into: (1) target date funds; (2) core funds; and (3) a self-directed brokerage account.  (Ex. B, 2017 Summary Plan Description ("SPD"), at 4, 20-22.)

*Target date funds* offer participants a one-step, broadly-diversified investment portfolio that adjusts over time.  (*Id.* at 20.)  There are twelve target date funds, which correlate to individual participants' anticipated retirement dates.  (Ex. C, Form 5500 for Plan Year 2016, at 29.)

*Core funds* allow participants to construct their own diversified investment portfolios from a menu of eight Plan investment options that includes passively-managed and actively-managed funds in a variety of asset classes.  (Ex. B, 2017 SPD, at 21; Ex. D, Summary of Material Modification, at 3.)  Passively-managed funds are designed to track specific indexes or other benchmarks.  (Ex. B, 2017 SPD, at 21.)  Actively-managed funds, which generally carry higher investment management fees, are designed to outperform specific benchmarks.  (Ex. C, Form 5500 for Plan Year 2016, at 30; Ex. B, 2017 SPD, at 21.)  The actively-managed funds offered as core funds in the Plan are diversified among several investment managers.  (*Id.*)  This allows for different management styles to achieve the goals of outperforming the market, depending on the economic environment, and reducing risks associated with a single manager.  (*Id.*)  Participants may also construct a custom portfolio by using the Plan's

Case 1:17-cv-02872-CMA-NYW   Document 58   Filed 05/16/18   USDC Colorado   Page 4 of 17

*self-directed brokerage account*, which offers a much wider range of funds through a

Charles Schwab account.  (Ex. B, 2017 SPD, at 20.)

The Large Cap Fund was one of the Plan's actively-managed core funds.  (*Id.* at

64; Ex. C, Form 5500 for Plan Year 2016, at 30.)  Its holdings were diversified across

five active managers and one passive manager.  (SAC ¶ 28.)  The Fund was also a

component of the Plan's target date funds.  (*Id.* ¶ 5.)  Birse allocated a portion of her

401(k) account to the 2015 target date fund and Detwiler directly allocated a portion of

his account to the Large Cap Fund.  (*Id.* ¶ 8.)

**Complaint Allegations.**  All of plaintiffs' claims relate to the Large Cap Fund.  In

their first claim, plaintiffs allege that CIM breached its fiduciary duty by imprudently

offering the allegedly underperforming Fund, and then failing to replace it.  (*Id.* ¶¶ 52-

57.)  In their second claim, plaintiffs allege that CenturyLink breached a duty to monitor

CIM with respect to the Fund.  (*Id.* ¶¶ 58-63.)  In their third claim, plaintiffs allege that

CenturyLink is liable as a cofiduciary for CIM's alleged breach.  (*Id.* ¶¶ 64-67.)

## ARGUMENT

Plaintiffs' claims amount to nothing more than Monday-morning quarterbacking.

They draw no connection between any defendant's fiduciary *decision-making process*

and any alleged Plan *loss*, and they fail to plead that CenturyLink is a fiduciary to the

Plan.  Their only substantive allegation—that, in hindsight, the Plan could have

generated better returns by making different choices—does not support a plausible

fiduciary breach claim.  The Court should dismiss their claims.

I.      **Plaintiffs Fail To Plead Facts Sufficient To State Any Claim For Breach Of Fiduciary Duty Based On The Plan's Investment In The Large Cap Fund.**

Plaintiffs' allegation that the Large Cap Fund trailed its benchmark by 2.11% over a five-year period gets them nowhere near pleading "enough facts to state a claim to relief *that is plausible on its face*," as they must to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1183 (10th Cir. 2016). To state a claim, plaintiffs' complaint must allow the court to "infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal with prejudice is appropriate when "it is obvious that . . . it would be futile to give [plaintiffs] an opportunity to amend," *Sayed v. Broman*, 638 F. App'x 698, 700-01 (10th Cir. 2016), such as when multiple amendments have failed to cure pleading deficiencies, *see, e.g.*, *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (affirming dismissal of claims with prejudice after complaint amendment).

Plaintiffs are on their third attempt to state a plausible claim for relief. Yet their allegations remain insufficient to allow the Court to "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Thus, the second amended complaint should be dismissed with prejudice.

A.      **Plaintiffs' Hindsight-Driven Criticisms Of The Performance And Structure Of The Large Cap Fund Are Insufficient.**

All three of plaintiffs' claims depend on plaintiffs' improper, hindsight-based allegation that offering the Large Cap Fund was a breach of fiduciary duty. These claims are assessed in light of ERISA's general approach to defined contribution plans.

ERISA "encourages sponsors to allow more choice to participants in defined-contribution plans." *Loomis v. Exelon Corp.*, 658 F.3d 667, 673 (7th Cir. 2011). Fiduciaries may value a wide range of investment features in creating a plan's investment lineup. *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *10 (N.D. Cal. Aug. 29, 2016); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 586-87 (7th Cir. 2009).

Plaintiffs' first claim, against CIM only, is that selecting and continuing to offer the Large Cap Fund as a Plan investment option was a breach of the duty of prudence.[3] Plaintiffs' second and third claims, asserting a failure to monitor and cofiduciary liability against CenturyLink only, depend on their allegation that CIM breached its duty, and those claims cannot survive if the first claim fails. *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-CV-1839, 2016 WL 7494320, at *11, *16 (D. Conn. Dec. 30, 2016) (dismissing cofiduciary and monitoring claims along with claim for underlying breach), *aff'd*, No. 17-0239-CV, 2017 WL 4534782 (2d Cir. Oct. 11, 2017). Thus, to state a claim for breach of fiduciary duty against either defendant, plaintiffs must plead not only that CIM is a Plan fiduciary for investment decisions, but also two additional elements: (1) that it breached its fiduciary duties and (2) that its breach resulted in a loss to the Plan. 29 U.S.C. § 1109; *Pioneer Ctrs. Holding Co. Emp. Stock Ownership*

---

[3] Plaintiffs phrase this as a "duty to monitor and replace investment options." (SAC ¶¶ 52-57.) But ERISA's fiduciary duties are statutory, and the statute includes no such duties. *See* 29 U.S.C. § 1104(a)(1) (enumerating duties of loyalty, prudence, diversification, and compliance with plan documents). Courts construe claims like plaintiffs' as alleging a breach of the duty of prudence. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015) (duty of prudence involves a continuing duty to monitor investments and remove imprudent ones).

*Plan & Tr. v. Alerus*, 858 F.3d 1324, 1334 (10th Cir. 2017), *cert. pending*, No. 17-667 (Nov. 6, 2017).

With respect to pleading the element of breach, "[t]he test of prudence . . . is one of *conduct*, and not a test of the result of performance of the investment." *Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 10 (1st Cir. 2018) (emphasis in original).  A decision reached as a result of rational consideration is not a fiduciary breach, even if its outcome is undesirable.  *See id.*  Courts examine the fiduciary's *process* and *method* of arriving at a challenged decision—not the results.  *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7-8 (1st Cir. 2009).  Thus, "[a] complaint that lacks allegations relating directly to the methods employed by the ERISA fiduciary may survive a motion to dismiss only if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." *White*, 2016 WL 4502808, at *8 (internal quotation marks omitted).  A key consideration is whether the plaintiff adequately alleges that a prudent fiduciary in the same position as the defendants could have known that some alternative course of action would have yielded a better result.  *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016).

Hindsight-based challenges to fiduciary decisions are not enough.  ERISA requires fiduciaries to act in the manner of a prudent fiduciary "under the circumstances then prevailing."  29 U.S.C. § 1104(a)(1)(B).  Courts judge a fiduciary's actions "based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."  *Pension Ben. Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 716 (2d Cir. 2013); *see*

*also Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  Therefore,

alleging that a particular investment option that is offered as one of many acceptable

alternatives underperformed is not enough to support a breach of fiduciary duty claim.[4]

*Cf. Barchock v. CVS Health Corp.*, 886 F.3d 43, 51-55 (1st Cir. 2018) (affirming

dismissal of breach of fiduciary duty claims challenging a fund investment option); *see*

*also Sweda v. Univ. of Pa.*, No. CV 16-4329, 2017 WL 4179752, at *7, *10 (E.D. Pa.

Sept. 21, 2017) (dismissing claims based on allegations consistent with prudent

fiduciary process).

        In order to adequately plead the loss element, plaintiffs must plead that the

Plan's alleged loss resulted from the alleged breach.  29 U.S.C. § 1109; *Pioneer*, 858

F.3d at 1334; *see also Hill v. Tribune Co.*, No. 05 C 2602, 2006 WL 2861016, at *18-*19

(N.D. Ill. Sept. 29, 2006) (dismissing claims where alleged losses were not attributable

to alleged fiduciary breaches), *aff'd sub nom. Pugh v. Tribune Co.*, 521 F.3d 686 (7th

Cir. 2008).  Bare allegations of underperformance or high fees are insufficient.  *See St.*

*Vincent*, 712 F.3d at 723-24; *White*, 2016 WL 4502808, at *10-*11.  Allegations

comparing the returns for different funds are also insufficient because funds are

designed for different purposes, which undermines any expectation that they will have

similar returns over any given span of time.  *See Meiners v. Wells Fargo & Co.*, No. CV

16-3981, 2017 WL 2303968 at *3 (D. Minn. May 25, 2017).

---

[4] Courts have held that expense ratios much higher than the Large Cap Fund's alleged
0.41% expense ratio are insufficient to support an inference of fiduciary breach.  *See*
*White*, 2016 WL 4502808, at *11 (ratios between 0.05% and 1.24% and collecting
cases).

Here, plaintiffs' hindsight-driven and internally inconsistent criticisms of the Large Cap Fund's performance and costs are insufficient to plead a fiduciary breach, much less one that resulted in a Plan loss.  Plaintiffs allege that the Fund was flawed because it used five different active managers. (SAC ¶¶ 30-31.)  They allege that, because of the efficient nature of the market for large cap stocks, any active management, which carries with it a higher fee, is unjustifiable.[5] (*Id.* ¶¶ 25-27.)  Finally, plaintiffs make selective performance comparisons to the returns on other large cap funds.  (*Id.* ¶¶ 4, 34-37.)  None of these criticisms save plaintiffs' claims.

*First*, plaintiffs fail to plead a breach because they do not allege that CIM's fiduciary decision-making process with regard to the Large Cap Fund was imprudent; they allege only that it turned out to be wrong.  Plaintiffs use hindsight to cherry-pick a better performing fund and argue that CIM should have offered that fund instead (*id.* ¶¶ 36-37), but identify no flaw in the process CIM used to select the Large Cap Fund. To the contrary, they actually explain that "CIM designed the Large Cap Fund using a multiple manager approach 'in order to provide exposure to different styles of portfolio management,' 'increased resources' and 'a broader range of investment ideas.'" (*Id.* ¶ 29.)  Those are rational bases for an investment decision, and even if hindsight shows they did not produce market-beating results, they support an inference of a prudent (and

---

[5] The Court should not accept as true plaintiffs' unsupported assertions about the unsuitability of actively-managed funds.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (holding that the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

negate an inference of an imprudent) decision-making process.  *See White*, 2016 WL 4502808, at *7-*8.

    *Second*, plaintiffs are even further from alleging that a loss to the Plan resulted from CIM's decision to offer the Large Cap Fund.  With respect to participants who, like Detwiler, made direct allocations of their Plan accounts to the Fund, plaintiffs compare the Fund's performance unfavorably to that of another Plan option, the CenturyLink U.S. Stock Index Fund.  (SAC ¶¶ 25-33.)  But plaintiffs ignore that participants could have selected this passive investment fund if they wanted to avoid the greater risks and costs of the Large Cap Fund.  (*Id.* ¶¶ 8, 23.)  Or they could have used the Plan's brokerage window to access hundreds of other actively and passively-managed funds.  (Ex. B, 2017 SPD, at 21-22.)  Participants who did not want a multiple active manager approach could have selected a different option.[6]

    Thus, any purported loss from the Large Cap Fund's alleged underperformance resulted from participants' decisions about how to allocate their Plan accounts—not from CIM's decision to give them a choice between the actively-managed Large Cap Fund and the passively-managed U.S. Stock Index Fund.[7]  Thus, there is no plausible

---

[6] The Plan provides participants with "Fund Fact Sheets," which, in combination with other Plan disclosures, provide that information, as well as the expense ratios for each fund.  (*See, e.g.*, Ex. E, Large Cap Fund Fact Sheet, June 30, 2017, at 2; Ex. B, 2017 SPD, at 21 (identifying Fund Fact Sheets as source for investment information).)

[7] It is apparent from the face of the complaint that the Plan satisfies ERISA's safe harbor provision, 29 U.S.C. § 1104(c), which exempts defendants from responsibility for plaintiffs' investment decisions.  This provides an independent basis for dismissal.  *See Hecker*, 556 F.3d at 589.

support for their fiduciary breach claims.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3d Cir. 2011); *Hecker*, 556 F.3d at 586-87.

With respect to participants who utilized target date funds, plaintiffs do not allege that the performance of those funds was worse than alternative options.  They allege that a hypothetical target date fund that substituted the T. Rowe Price Fund for the Large Cap Fund would have had better returns, but they fail to explain how CIM, *without the benefit of the hindsight plaintiffs enjoy*, could have known that the T. Rowe Price Fund would be the best-performing.  (SAC ¶ 37.)  And plaintiffs do not include any allegations suggesting that, had CIM eliminated the Large Cap Fund, the target date funds would have had better results.  A different structure could just as easily have resulted in a worse return.  Such speculation is insufficient to state a claim.  *See White*, 2016 WL 4502808, at *12 (dismissing claims "primarily based on speculation" that plan fiduciaries could have offered other funds or structured investments differently).

Moreover, Detwiler, who did not allocate his Plan account to any target date fund (SAC ¶ 49), lacks standing to assert claims based on Plan investments in those funds. Similarly, Birse, who did not directly allocate her Plan account to the Large Cap Fund (*id.*), lacks standing to assert a claim based on such direct allocation.[8]  It is insufficient for Detwiler and Birse merely to assert that they are suing on behalf of other participants for the Plan's alleged losses.  "An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan

---

[8] Plaintiffs must establish standing under both the statutory standing requirements of ERISA and Article III of the Constitution.  *See Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1224-26 (10th Cir. 2011).

participant." *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015); *see also David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013). Thus, each of plaintiffs' claims should be dismissed for lack of standing to the extent they are premised on Plan investments in which she or he did not participate. *See Taveras*, 612 F. App'x at 29; *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*, 720 F. Supp. 2d 254, 265-66 (S.D.N.Y. 2010).

Plaintiffs have failed to plead any breach of the duty of prudence, let alone one that resulted in a loss to the Plan. They allege no facts suggesting that any fiduciary process was flawed, and no support for their assertion that CIM's decisions as to the Large Cap Fund resulted in any loss or injury to either of them individually or to the Plan. Their claims should be dismissed.

### B. Plaintiffs Fail To State A Claim For Cofiduciary Liability Or For A Breach Of The Duty To Monitor Against CenturyLink.

For their derivative claims against CenturyLink, plaintiffs must allege facts that support an inference that CenturyLink is a Plan fiduciary that breached its independent fiduciary duties in a way that caused or allowed CIM's alleged breach. *Matthews v. Duggal Color Projects, Inc.*, No. 94 CIV. 1140, 1997 WL 328076, at *2 n.1 (S.D.N.Y. June 16, 1997). To plead the elements of a claim for breach of the duty to monitor, plaintiffs must allege that CenturyLink had a duty to monitor another fiduciary and that it failed to fulfill that duty, resulting in injury. *See* 29 U.S.C. § 1109; *White*, 2016 WL 4502808, at *18. To state a claim for cofiduciary liability, plaintiffs must allege that CenturyLink is a fiduciary, that it had actual knowledge that a cofiduciary was

committing a breach, and that it failed to stop it.  *See Gernandt v. SandRidge Energy Inc.*, No. CIV-15-1001-D, 2017 WL 3219490, at *11 (W.D. Okla. July 28, 2017).

Courts reject unsupported assertions about fiduciary status.  *See, e.g.*, *Matthews*, 1997 WL 328076, at *2 n.1 (rejecting bare and conclusory allegation of fiduciary status).  An allegation that a defendant is a plan sponsor is insufficient as a matter of law to establish fiduciary status.  *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-78, 1294 (11th Cir. 2005) (dismissing breach of fiduciary duty claims with prejudice); *cf. Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (affirming district court's dismissal with prejudice of breach of fiduciary duty claim).

Here, plaintiffs' allegation that CenturyLink is the Plan's sponsor (*see* SAC ¶¶ 59-61, 66) is insufficient to support their cofiduciary liability claim.  *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) (holding actions taken as plan sponsor are not fiduciary in nature).  CIM, not CenturyLink, is named in the Plan's governing document as the fiduciary for all purposes related to the management and investment of Plan assets, which is the conduct plaintiffs challenge.[9]  (Ex. A, 2017 Plan, § 9.8(b).)  CenturyLink only adopted the Plan document, which is not a fiduciary function.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999); *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12 CIV. 04027, 2016 WL 110521, at *2-*3 (S.D.N.Y. Jan. 8, 2016) ("[A]ctions taken as a sponsor, such as establishing a plan, are not fiduciary functions that trigger liability under ERISA."), *aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir.

---

[9] The Plan documents are properly before the Court and therefore "trump the facts or allegations presented in the [c]omplaint."  *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

2016).  Thus, plaintiffs have failed to plead that CenturyLink is a Plan fiduciary at all, much less with respect to investment decisions.

In addition, plaintiffs have failed to allege any mechanism through which CenturyLink should have known that CIM was allegedly breaching its duties, or what CenturyLink should have done to stop any alleged breaches.  *See White*, 2016 WL 4502808, at *18.  Plaintiffs do not allege that CIM should have been removed as a fiduciary, and they do not seek such relief.  Thus, plaintiffs have failed to make out their claims for cofiduciary liability and breach of the duty to monitor.

## II.     Birse's Claims Are Time Barred.

Claims for breach of ERISA fiduciary duties must be brought within three years of plaintiffs' actual knowledge of the alleged breach.  29 U.S.C. § 1113(2); *Mid-S. Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016).  A plaintiff has actual knowledge when she knows "all material facts necessary to understand that some claim exists."  *Mid-S. Iron Workers Welfare Plan v. Harmon*, No. CIV-15-138-C, 2015 WL 1137403, at *2 (W.D. Okla. Mar. 12, 2015) (dismissing breach of fiduciary duty claims filed beyond the three year statute of limitations), *aff'd*, 645 F. App'x 661 (10th Cir. 2016).  Dismissal is appropriate when the information that forms the basis of the complaint is disclosed to participants more than three years before the claim is brought. *Young v. GM Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009); *see also Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (charging plaintiffs with actual knowledge of information in plan).

Here, all the essential facts that form the basis of plaintiffs' claims were disclosed to Birse more than three years before the complaint was filed.  Plaintiffs' claims are based on their allegations that the Large Cap Fund had substantial management fees, that it underperformed, and that it used too many investment managers.  (*See generally* SAC.)  U.S. Department of Labor regulations have required detailed disclosures of these facts to participants for years.  *See* 29 C.F.R. § 2550.404a-5 (effective Dec. 20, 2010); Annual Reporting & Disclosure, 72 Fed. Reg. 64, 710 (Nov. 16, 2007) (describing disclosures to be effective January 15, 2008 under 29 C.F.R. § 2520).  Plaintiffs do not allege that defendants failed to make these mandatory disclosures, and a review of the Plan's governing documents and required disclosures to participants demonstrates that they did.[10]

Birse has been a Plan participant, and therefore, has received Plan disclosures, since 2012.  (SAC ¶ 16.)  Thus, Birse's claims, which were first brought in her November 30, 2017 complaint, are untimely and should be dismissed.

## CONCLUSION

The Court should dismiss plaintiffs' second amended complaint with prejudice.

---

[10] Plan documents and communications disclose the gross expense ratio for the Large Cap Fund.  (*See, e.g.*, Ex. E, Large Cap Fund Fact Sheet, June 30, 2017, at 1-2; Ex. F, 2015 Target Date Fund Fact Sheet, Sept. 30, 2014, at 1-2; (*see also* SAC ¶ 25).)

Dated:  May 16, 2018                     Respectfully submitted,

                                         By:      /s/ *Craig C. Martin*

HOLLAND & HART LLP                       JENNER & BLOCK LLP
Michael S. Beaver                        Craig C. Martin
Steven T. Collis                         Amanda S. Amert
6380 S. Fiddlers Green Circle            Cristina Covarrubias
Suite 500                                Laura L. Norris
Greenwood Village, Colorado 80111        353 N. Clark Street
Tel: (303) 290-1600                      Chicago, Illinois 60654
                                         Tel: (312) 923-2776
                                         Fax: (312) 840-7776

                                         *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 16, 2018, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Franklin D. Azar
H. Zachary Balkin
Paul R. Wood
Keith R. Scranton
Devyn R. Glass
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 757-3206
azarf@fdazar.com
balkinz@fdazar.com
woodp@fdazar.com
scrantonk@fdazar.com
glassd@fdazar.com

***Counsel for Plaintiffs***

/s/ *Craig C. Martin*
Craig C. Martin