**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-2872-CMA-NYW

BONNIE BIRSE and GERAD DETWILER, individually and on behalf of all similarly situated participants and beneficiaries of the CenturyLink Dollars & Sense 401(k) Plan,

    Plaintiffs,

v.

CENTURYLINK, INC. and CENTURYLINK INVESTMENT MANAGEMENT COMPANY,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants move to dismiss plaintiffs' third amended complaint with prejudice.

## **CERTIFICATE OF CONFERRAL**

Pursuant to D.C.Colo.LCivR 7.1 and CMA Civ. Practice Standard 7.1D, defendants' counsel certify that they communicated with plaintiffs' counsel regarding the deficiencies of the third amended complaint by telephone on March 25, 2019. Plaintiffs' counsel declined to cure the deficiencies and indicated they oppose this motion.

\* \* \*

Plaintiffs' third amended complaint should be dismissed because it fails to cure the defects that led to the dismissal of their previous complaint.[1] Plaintiffs' new complaint

---

[1] *See* Dkt. 78, Recommendation of United States Magistrate Judge (the "Recommendation"); Dkt. 93, Order Affirming in Part and Rejecting in Part the Recommendation of United States Magistrate Judge Nina Y. Wang (the "Order").

does not change the fact that, when stripped of hindsight (as they must be), plaintiffs' allegations do not support an inference of imprudence by plan fiduciaries. Thus, the Court should dismiss all of plaintiffs' claims with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

***Procedural History.*** Plaintiffs filed their second amended complaint on May 2, 2018 (Dkt. 53), and defendants moved to dismiss that complaint. (Dkt. 58.) On November 19, 2018, Magistrate Judge Wang recommended plaintiffs' second amended complaint be dismissed with prejudice because plaintiffs failed to allege facts sufficient to state any claim for breach of ERISA fiduciary duties. (Dkt. 78.) On March 20, 2019, this Court adopted the recommendation of dismissal but granted plaintiffs leave to amend (Dkt. 93), and plaintiffs' third amended complaint was filed on March 20, 2019. (Dkt. 94.)

***The Parties.*** The CenturyLink Dollars & Sense 401(k) Plan (the "Plan") is a 401(k) plan offered to CenturyLink employees and sponsored by CenturyLink, Inc. ("CenturyLink"). (Dkt. 93 at 2.) CenturyLink Investment Management ("CIM") is the fiduciary responsible for managing and investing the Plan's assets. (*Id.*) Plaintiff Birse is, and plaintiff Detwiler was, a participant in the Plan. (Dkt. 78 at 3.) At all times relevant to this action, CIM selected a wide range of investment options for Plan participants, and participants, including plaintiffs, chose how much to contribute and how to allocate their accounts across the investment options offered. (Dkt. 94, Third Amended Complaint

---

[2] The parties and procedural history are now well-known to the Court and are described in defendants' motion to dismiss plaintiffs' second amended complaint (*see* Dkt. 58) and the Recommendation and Order on that motion (*see* Dkts. 78, 93). Defendants accept the well-pled factual allegations of the third amended complaint as true for purposes of this motion to dismiss only.

("TAC") ¶¶ 38–39; Ex. A, 2017 Plan, § 9.8(b); *see also id.* § 9.1; Ex. B, Form 5500 for Plan Year 2016 ("2016 Form 5500"), at 28–30.[3])

**Complaint Allegations.** The majority of plaintiffs' allegations are unchanged from their previous complaint. All three of plaintiffs' claims relate to the Active Large Cap U.S. Stock Fund (the "Fund"). In their first claim, plaintiffs allege CIM breached its fiduciary duty by imprudently offering the allegedly underperforming Fund and then failing to replace it. (TAC ¶¶ 104–108.) In their second claim, plaintiffs allege CenturyLink breached a duty to monitor CIM with respect to the Fund. (*Id.* ¶¶ 109–14.) In their third claim, plaintiffs allege CenturyLink is liable as a co-fiduciary for CIM's alleged breach. (*Id.* ¶¶ 115–18.)

The Fund was one of the Plan's actively-managed core funds, and also was included as a component of the Plan's target date funds. (Dkt. 78 at 2–3.) Its holdings were diversified across five active managers and one passive manager. (Dkt. 93 at 2.) Birse allocated a portion of her 401(k) account to the 2015 Target Date Fund and Detwiler directly allocated a portion of his account to the Fund. (TAC ¶¶ 22–23; *see also id.* ¶¶ 13–14.)

Plaintiffs' new allegations primarily document CIM's work to design the Fund and monitor its performance over time. When designing the Fund, CIM conducted testing of

---

[3] Exhibit citations are to the exhibits to the Declaration of Amanda S. Amert. Plan documents may be considered without converting this Rule 12(b)(6) motion to a Rule 56 motion because they are referenced indirectly in the third amended complaint (*see, e.g.*, TAC ¶¶ 5, 35–36, 43) and are central to plaintiffs' claims. *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016). The Court may also take judicial notice of public filings such as the Plan's 2016 Form 5500. *Id.* at 388 n.5.

its multi-manager strategy by evaluating its performance in a hypothetical past market. (*Id.* ¶ 47.) CIM selected the Fund's managers based on direct experience, including with respect to CenturyLink's defined benefit plan, and conducted additional "due diligence through calls, meetings, site visits, and quantitative analysis." (*Id.* ¶¶ 51–52.) CIM's stated objectives for the Fund were to outperform the Fund's benchmark, to "provide participants with full beta exposure to asset classes," and to "maintain sufficient liquidity to allow for efficient rebalancing." (*Id.* ¶ 41; *see also id.* ¶¶ 42–43.)

To monitor the Plan, CIM performed periodic reviews of Plan investment options. (*Id.* ¶ 63.) CIM evaluated the Fund's performance, managers, and investment strategy, including at the three-year anniversary of the Fund in May 2015, and in May 2016 and April 2017. (*Id.* ¶¶ 70, 75, 78.) CIM implemented changes to improve the Fund's performance, including terminating an underperforming manager. (*Id.* ¶ 77.) CIM also considered the recommendation of its target date fund glide path consultant regarding the composition of the target date funds (*id.* ¶ 92), and ultimately merged the Fund with the Active Small Cap U.S. Stock Fund to create the Active U.S. Stock Fund (*id.* ¶ 80).

## **ARGUMENT**

This Court previously rejected plaintiffs' allegations because it recognized that hindsight cannot form the basis of breach of fiduciary duty claims. (Dkt. 93 at 6.) But without the linchpin of hindsight, plaintiffs' most recent allegations—like those in their previous complaint—cannot support an inference of imprudence. The additional detail plaintiffs have added only underscores that plaintiffs cannot find fault with the fiduciary process CIM followed, but can only use after-the-fact performance data to argue CIM

4

should have made different decisions. That is not enough. Thus, the Court should once again dismiss plaintiffs' claims "for failure to state a claim upon which relief can be granted." (*See id.* at 4 (citing Fed. R. Civ. P. 12(b)(6)).)

Rule 12(b)(6) requires plaintiffs to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility demands more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The "scope of the allegations may not be 'so general that they encompass a wide swath of conduct, much of it innocent' or else the plaintiff has 'not nudged [his] claims across the line from conceivable to plausible.'" (Dkt. 93 at 5 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks and citation omitted)).) On a motion to dismiss, the Court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." (*Id.* at 5 (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).) Plaintiffs' previous complaint did not. (*See generally id.*)

Plaintiffs' new allegations do not show that "it is plausible and not merely possible" that they are entitled to relief. (*See id.* at 5 (quoting *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F3d 1188, 1192 (10th Cir. 2009)).) Plaintiffs have added a number of new allegations, including: (1) details about CIM's process for selecting Plan investment options, designing the Fund, and selecting Fund managers (*e.g.*, TAC ¶¶ 37–39, 41–42, 45–47, 51–53); (2) assertions about the performance of the target date funds, the Fund,

5

and its managers (*e.g.*, *id.* ¶¶ 60–63, 66, 71–72, 79, 91); and (3) details about CIM's monitoring process (*e.g.*, *id.* ¶¶ 70, 75, 77–78, 80, 92). When disentangled from the improper hindsight-based allegations that plaintiffs have woven through them, these new allegations demonstrate CIM followed a prudent process to design and monitor the Plan's investment options.[4] Because plaintiffs have been unable to cure their pleading deficiencies after multiple amendments, the claims in their third amended complaint should be dismissed with prejudice. *See TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (affirming dismissal with prejudice after amendment).

## I.   Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty Against CIM.

In their first claim for relief, plaintiffs allege that CIM breached the duty of prudence by offering and retaining the Fund as a Plan investment option. (TAC ¶¶ 104–108.) To state a claim for breach of fiduciary duty, plaintiffs must plead that CIM is a Plan fiduciary, that it breached its fiduciary duties, and that its breach resulted in a loss to the Plan. 29 U.S.C. § 1109; *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus*, 858 F.3d 1324, 1333–34, 1337 (10th Cir. 2017), *cert. denied*, 139 S. Ct. 50 (2018). As to the breach element, plaintiffs:

> must allege facts establishing that the fiduciary's investment decisions—in the conditions prevailing at the time, and without the benefit of hindsight—are such that a reasonably prudent fiduciary would not have made that decision as part of a prudent, whole-portfolio, investment strategy that properly

---

[4] The remainder of the new material in plaintiffs' third amended complaint consists of assertions regarding fiduciary standards under ERISA (TAC ¶¶ 26–33), and conclusory statements regarding defendants' alleged breaches, which are not entitled to a presumption of truth.

6

> balances risk and reward, as well as short-term and long-term performance.

(Dkt. 93 at 6 (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 716 (2d Cir. 2013))); *see also In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1087–88 (D. Minn. 2017). This Court examines the process and method of arriving at the challenged decision rather than the outcome. (Dkt. 93 at 7); *see also Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009). This is because the "test of prudence . . . is one of *conduct* and not a test of the result of the performance of the investment." (Dkt. 93 at 7 (quoting *Ellis v. Fid. Mgmt. Trust Co.*, 883 F.3d 1, 10 (1st Cir. 2018) (emphasis added)).) A decision reached as a result of rational consideration is not a fiduciary breach, even if its outcome is undesirable. *See Ellis*, 883 F.3d at 11; *see also St. Vincent*, 712 F.3d at 716 ("ERISA's fiduciary duty of care requires prudence, not prescience." (internal quotation marks and citation omitted)).

Hindsight-based challenges to fiduciary decisions are insufficient to state a claim. (Dkt. 93 at 6.) Thus, alleging that a particular investment option—offered as one of many alternatives—underperformed is not enough to support a fiduciary breach claim. *Cf. Barchock v. CVS Health Corp.*, 886 F.3d 43, 55 (1st Cir. 2018) (affirming dismissal of fiduciary breach claims challenging a fund investment option). The Court takes into account a plan's entire investment portfolio, even where a claim relates to one particular investment. (Dkt. 93 at 6.)

Here, plaintiffs attack CIM's decisions with respect to the design of the Fund and its monitoring of the Fund's performance, including whether to replace it. (*See* TAC ¶¶ 107–108.) But plaintiffs' factual allegations, taken as true, remain insufficient to permit

a factfinder to conclude CIM plausibly breached its fiduciary duties on either front. They line up a detailed recitation of CIM's careful review and monitoring of the Fund and its managers, while pointing to an alternative—the T. Rowe Price Institutional Growth Fund (the "T. Rowe Price Fund")—that they allege, in hindsight, would have realized higher returns. Plaintiffs argue that, because the Fund did not perform better, any prudent fiduciary should have made different decisions. But, as this Court has recognized, this type of hindsight-based second-guessing is insufficient to state a claim, and because plaintiffs do not allege facts that suggest that a reasonably prudent fiduciary could not have designed or maintained the Fund "as part of a prudent, whole-portfolio, investment strategy," their claims fail. (*See* Dkt. 93 at 6.)

### A. Plaintiffs Fail To Plead A Flaw In The Process CIM Used To Design The Fund.

In their previous complaint, plaintiffs focused on CIM's use of a multi-manager approach in designing the Fund. (*See* Dkt. 53, Second Amended Complaint ("SAC") ¶¶ 30–31.) But this criticism failed to state a claim, because "offering exposure to different styles of portfolio management and reducing risks associated with a single manager demonstrate prudent decision-making." (Dkt. 93 at 8 (citing *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *7–8 (N.D. Cal. Aug. 29, 2016)).) Without alleging "facts establishing that CIM failed to reasonably balance risk and reward, as well as short-term and long-term performance, when it decided to diversify the Fund," or "factual allegations regarding imprudence in CIM's process of designing the Fund," plaintiffs cannot allege that the Fund's design was imprudent. (*Id.* at 8.)

In their current complaint, plaintiffs again fail to allege any facts that might show a deficient decision or process in the design of the Fund. *See Ellis*, 883 F.3d at 10–11. Instead, plaintiffs now detail CIM's prudent process and investment objectives in designing the Fund. For example, plaintiffs allege that CIM conducted a "back test" to determine how the multi-manager strategy "would have fared through past markets" (TAC ¶ 47), and selected managers based on direct experience (including with respect to CenturyLink's defined benefit plan) and by conducting additional "due diligence through calls, meetings, site visits, and quantitative analysis" (*id.* ¶¶ 51–52).[5]

Plaintiffs also describe CIM's reasoned strategy in designing the Fund, alleging that CIM sought not only to outperform the benchmark but also to "provide participants with full beta exposure to asset classes" and "maintain sufficient liquidity to allow for efficient rebalancing." (*Id.* ¶ 41; *see also id.* ¶¶ 42–43.) These are rational bases for an investment decision. Plaintiffs do not even allege that CIM failed to achieve these objectives. Thus, plaintiffs' allegations now strongly support an inference that CIM used a prudent decision-making process, and plaintiffs have pled themselves out of a claim. *See White*, 2016 WL 4502808, at *7–8; *see also Divane v. Northwestern Univ.*, No. 16-cv-8157, 2018 WL 2388118, at *6 (N.D. Ill. May 25, 2018) (holding plaintiffs failed to allege a fiduciary breach where complaint did not specify process flaws and identified reasons a prudent fiduciary could have for offering contested investment options).

---

[5] Plaintiffs' general allegation that CIM used "a flawed and poorly documented process" (TAC ¶ 40) is a legal conclusion that the Court should not take as true on a motion to dismiss. (*See* Dkt. 93 at 8.)

### B. Plaintiffs Plead No Facts Showing A Failure In CIM's Monitoring Process.

In their second amended complaint, plaintiffs alleged that CIM breached the duty of prudence in failing to monitor and replace the Fund when it underperformed its benchmark. (*See, e.g.*, SAC ¶¶ 34, 56.) Plaintiffs also claimed that, had CIM replaced the Fund with the T. Rowe Price Fund, plaintiffs would have realized higher returns.[6] (*Id.* ¶ 37.) These allegations "incorrectly focus[ed] on outcome rather than process." (Dkt. 93 at 10.) "[C]ourts must consider all relevant circumstances and the entire portfolio." (*Id.* at 11.) To state a claim, plaintiffs therefore must allege that "CIM's decision to remain with the [Fund] was unreasonable after weighing the opportunity costs of a switch, the comparative risk of the funds, the comparative short-term and long-term returns of the funds, and the balance of the overall portfolio." (*Id.* at 10.) Because, among other things, the Fund's alleged underperformance was paired with strong absolute performance of the Plan's entire portfolio, simply alleging that the Fund underperformed slightly is insufficient. (*Id.* at 10–11.)[7]

Plaintiffs' new factual allegations support an inference that CIM was engaged in prudent monitoring of the Plan's investment options, including the Fund. Plaintiffs allege

---

[6] Plaintiffs continue to rely on this allegation in their third amended complaint (*see* TAC ¶ 83), yet they still do not allege how CIM would have known the T. Rowe Price Fund would outperform the Fund, ignoring this Court's holding that hindsight-based challenges are insufficient to support a fiduciary breach claim. (Dkt. 93 at 6–7, 10.)

[7] While plaintiffs allege that the Fund underperformed slightly, they ignore that the Plan as a whole performed well. (*Compare* Ex. B. 2016 Form 5500, at 2 & Schedule H (reporting 35,785 participants and $3,687,832,382 in assets as of December 31, 2016), *with* TAC ¶ 21 (alleging 34,274 participants and $5,683,666,005 in assets as of December 31, 2017—a nearly $2 billion increase in assets with approximately 1,500 fewer participants than the prior year).)

that CIM performed periodic reviews of Plan investment options (TAC ¶ 63), evaluated the Fund's performance, managers, and investment strategy, including at the three-year anniversary of the Fund in May 2015, and in May 2016 and April 2017 (*id.* ¶¶ 70, 75, 78), and implemented changes to improve the Fund's performance, including terminating an underperforming manager (*id.* ¶ 77). They also add that CIM considered the recommendation of its target date fund glide path consultant regarding the composition of the target date funds (*id.* ¶ 92) and eventually merged the Fund with the Active Small Cap U.S. Stock Fund to create the Active U.S. Stock Fund (*id.* ¶ 80). Moreover, plaintiffs do not allege that CIM had any improper reason to retain the Fund's managers. The logical inference is that CIM concluded, based on this ongoing monitoring, that it was choosing the best course for the Plan's investment portfolio as a whole.

These are not the acts of an imprudent fiduciary employing a flawed process. (*See* Dkt. 93 at 6–7.) Plaintiffs thus have once again failed to plead sufficient factual allegations to state a breach of fiduciary duty claim against CIM based on a failure to monitor.

## II.    Plaintiffs Fail To State A Claim Against CenturyLink.

Plaintiffs' claims that CenturyLink breached its duty to monitor CIM and is liable as a co-fiduciary are unchanged from their second amended complaint. These claims are wholly dependent on the viability of plaintiffs' claims against CIM, because "[p]laintiffs allege no separate or additional basis for a breach of duty to monitor by CenturyLink." (Dkt. 93 at 12); *see also White*, 2016 WL 4502808, at *19. Plaintiffs have added no new allegations to change that holding. Thus, because plaintiffs have not alleged a plausible claim against CIM, their derivative claims against CenturyLink also fail.

Plaintiffs' allegations also independently fail to satisfy the required pleading standard. To plausibly state a derivative claim against CenturyLink, plaintiffs must allege facts that give rise to a reasonable inference that CenturyLink is a Plan fiduciary and that CenturyLink breached its independent fiduciary duties. For a failure to monitor claim, plaintiffs must plausibly allege CenturyLink had a duty to monitor CIM and failed to fulfill that duty, resulting in injury. *See* 29 U.S.C. § 1109; *White*, 2016 WL 4502808, at *18. As to co-fiduciary liability, plaintiffs must plead CenturyLink had actual knowledge that CIM was committing a breach and failed to stop it, resulting in injury. *See* 29 U.S.C. § 1105(a); *Gernandt v. SandRidge Energy Inc.*, No. CIV-15-1001-D, 2017 WL 3219490, at *11 (W.D. Okla. July 28, 2017).

Plaintiffs' assertions that CenturyLink (1) is the Plan Sponsor, and (2) that its Board of Directors has the sole authority to appoint and remove CIM as the Plan's investment fiduciary and to amend or terminate the Plan, are insufficient to support the allegation that CenturyLink is a Plan fiduciary. (TAC ¶¶ 8, 24.) First, CIM, not CenturyLink, is named in the Plan's governing document as the fiduciary for all purposes related to the management and investment of Plan assets, which is the conduct plaintiffs challenge.[8] (Ex. A, 2017 Plan, § 9.8(b).) CenturyLink only adopted the Plan document, and merely sponsoring a plan does not turn the plan sponsor into a functional fiduciary. (*See* Dkt. 78 at 24); *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) (holding actions taken as plan sponsor are not fiduciary in nature); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444–

---

[8] The Plan documents are properly before the Court, as they are central to plaintiffs' claims and the parties have not disputed the documents' authenticity. (*See* Dkt. 78 at 22 (citing *Wasatch Equal.*, 820 F.3d at 386).)

12

45 (1999); *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12 Civ. 04027, 2016 WL 110521, at *2 (S.D.N.Y. Jan. 8, 2016) ("[A]ctions taken as a sponsor, such as establishing a plan, are not fiduciary functions that trigger liability under ERISA."), *aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016). Second, plaintiffs' allegations are inadequate to establish that the Board exercised functional control over the Plan's investment decisions. *See Teets v. Great-West Life & Annuity Ins. Co.*, No. 18-1019, 2019 WL 1372319, at *11 (10th Cir. Mar. 27, 2019) (affirming non-fiduciary status where defendant never exercised discretionary authority or control over plan or its assets). Nowhere do plaintiffs allege facts suggesting the Board had a duty to monitor CIM; the 118-paragraph complaint contains one reference to the Board and one reference to CenturyLink's "senior management." (TAC ¶¶ 24, 37.) The complaint is otherwise bereft of facts to support even an inference that CenturyLink exercised functional control over the Plan's investment decisions.

Even assuming plaintiffs had plausibly pled that CenturyLink is a fiduciary (which they have not), their claims that CenturyLink breached its duty by failing to monitor CIM are unsupported by any facts that could give rise to an inference of some deficiency in the monitoring process. In their claim for relief, plaintiffs assert that CenturyLink did not properly monitor: CIM's design of the Fund; the investments CIM chose to offer to the Plan; and whether CIM had a process to monitor and react to the performance of the Fund and the target date funds. (*Id.* ¶ 113.) But these are *legal conclusions*; the complaint contains no new *factual allegations* regarding CenturyLink's alleged failure to monitor, and plaintiffs' legal conclusions are not entitled to a presumption of truth. (*See* Dkt. 93 at

8.) All that plaintiffs offer the Court is "the outcome of the process—the retention and alleged subpar performance of the Fund – which in and of itself, is insufficient to state a claim for a failure to monitor." (Dkt. 78 at 21 (citing *In re Lehman Bros. Sec. and ERISA Litig.,* 113 F. Supp. 3d 745, 757–58 (S.D.N.Y. 2015) (finding a failure to state a claim for failure to monitor despite the collapse of Lehman Brothers); *Kopp v. Klein*, 894 F.3d 214, 217, 221 (5th Cir. 2018) (finding failure to state a claim for failure to monitor despite threat of being delisted from the New York Stock Exchange for low stock price)).) As a result, plaintiffs have not alleged a breach of the duty to monitor.

Similarly, the allegations in the complaint regarding CenturyLink's actual knowledge of or failure to stop CIM's alleged fiduciary breaches are little more than a recitation of the elements of co-fiduciary liability and are not sufficient to state a claim on that basis. A co-fiduciary claim does not impose vicarious liability, it requires actual knowledge. *See Renfro v. Unisys Corp.,* 671 F.3d 314, 324–25 (3d Cir. 2011); *Gernandt*, 2017 WL 3219490, at *11. Plaintiffs assert that, as the Plan sponsor, CenturyLink knew that the Fund underperformed and that CIM did not replace the Fund. (TAC ¶ 117.) Plaintiffs' conclusory assertion does not provide factual content that would allow the Court to draw the reasonable inference that CenturyLink had actual knowledge that retaining the Fund constituted a breach. As such, plaintiffs have failed to plead their co-fiduciary liability claim. *See Renfro,* 671 F.3d at 324–25 (affirming dismissal of co-fiduciary claim where plaintiffs failed to allege defendants had actual knowledge of allegedly flawed process regarding selection of investment options); *Gernandt*, 2017 WL 3219490, at *11 (dismissing co-fiduciary liability claim where plaintiffs failed to plead sufficient factual

allegations that would allow the court to draw the reasonable inference that defendant had actual knowledge of its co-defendant's alleged misconduct). Thus, plaintiffs' claims for co-fiduciary liability and breach of the duty to monitor should both be dismissed.

### III. Plaintiffs' Claims Should Be Dismissed With Prejudice.

Dismissal with prejudice is appropriate where, as here, plaintiffs have demonstrated a repeated inability to cure pleading deficiencies. *See TV Commc'ns Network*, 964 F.2d at 1028; *Nat'l Ass'n of Inv'rs Corp. v. Bivio, Inc.*, No. 11-CV-02435-WJM, 2013 WL 316021, at *8 (D. Colo. Jan. 28, 2013). This Court previously recognized that plaintiffs' repeated inability to cure pleading deficiencies could have justified dismissing plaintiffs' previous complaint with prejudice, but allowed plaintiffs to re-plead in the interest of justice. (Dkt. 93 at 14–15.) Plaintiffs have now definitively demonstrated they cannot plausibly plead any breach of fiduciary duty by defendants, and their claims should be dismissed with prejudice.

### CONCLUSION

The Court should dismiss plaintiffs' third amended complaint with prejudice.

Dated: April 3, 2019    Respectfully submitted,

By:   /s/ *Craig C. Martin*

HOLLAND & HART LLP
Michael S. Beaver
Steven T. Collis
6380 S. Fiddlers Green Circle
Suite 500
Greenwood Village, Colorado 80111
Tel: (303) 290-1600

JENNER & BLOCK LLP
Craig C. Martin
Amanda S. Amert
Cristina Covarrubias
Laura L. Norris
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 923-2776
Fax: (312) 840-7776

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 3, 2019, I have caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Paul R. Wood
Keith R. Scranton
Devyn R. Glass
14426 East Evans Avenue
Aurora, Colorado 80014
Telephone: (303) 757-3300
Facsimile: (303) 757-3206
woodp@fdazar.com
scrantonk@fdazar.com
glassd@fdazar.com

***Counsel for Plaintiffs***

/s/ *Craig C. Martin*
Craig C. Martin